SEVENTEEN STONE CORP., suing on its own behalf and as a stockholder of General Telephone Company of Florida, on behalf of all other stockholders similarly situated and on behalf of said corporation, Plaintiff,

v.

GENERAL TELEPHONE COMPANY OF FLORIDA and General Telephone & Electronics Corporation, Defendants.

United States District Court
S. D. New York.
May 9, 1962.

Geist, Netter & Marks, New York City, for plaintiff.

George E. Netter, Milton Waxenfeld, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant, General Telephone Company of Florida.

William C. Chanler, Walter J. Holzka, New York City, of counsel.

Theodore F. Brophy, New York City, for defendant, General Telephone & Electronics Corporation.

BONSAL, District Judge.

Plaintiff, Seventeen Stone Corp., a New Jersey corporation, "suing on its own behalf and as a stockholder of General Telephone Company of Florida, on behalf of all other stockholders similarly situated and on behalf of said corporation," brings this action against General Telephone Company of Florida (Florida) and General Telephone & Electronics Corporation (General Telephone).

Service on Florida was made in Florida pursuant to 28 U.S.C. § 1695, which provides:

"§ 1695.    *Stockholder's derivative action*

"Process in a stockholder's action in behalf of his corporation may be served upon such corporation in any district where it is organized or licensed to do business or is doing business."

The plaintiff is the owner of 398 shares of the common stock of Florida out of a total of 1,555,248 shares issued and outstanding, of which more than 99% is owned by General Telephone. It is alleged in the complaint that on or about September 30, 1960 Florida issued to General Telephone 160,000 shares of its common stock in payment of an indebtedness of Florida to General Telephone of $7,000,000 for money loaned, being a price of approximately $43.75 per share. The complaint then alleges that at the time of the issue the true, actual and fair value of the stock of Florida was at least $87.50 a share, or a total of $14,000,000 for the 160,000 shares, which General Telephone and the directors of Florida "well knew".

Florida now moves for an order, pursuant to Rule 12(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C., setting aside the service of the summons and dismissing the complaint against it on the ground of lack of jurisdiction.

Defendant General Telephone moves simultaneously for an order, also pursuant to Rule 12(b), dismissing the complaint on the ground that this Court lacks jurisdiction of the subject matter of the action, or, in the alternative, upon the ground that the complaint fails to state a claim on which relief can be grounded.

If on the facts alleged plaintiff has properly stated a derivative cause of action, then the plaintiff's service of process upon Florida in the State of Florida was valid.   28 U.S.C. § 1695.

On the other hand, if plaintiff has not properly stated a derivative cause of action, then § 1695 is inapplicable and this Court has no jurisdiction over Florida. Also, if the action is not derivative but only personal to the minority stockholder, then the action must fail against General Telephone for the maximum damages sustained by the plaintiff would be below the jurisdictional amount of $10,000.

Thus the sole issue presented by these motions is whether plaintiff has properly stated a derivative cause of action.

■    In order for a stockholder to sue derivatively on behalf of his corporation, the corporation itself must have a cause of action.   Koster v. Lumbermans Mutual Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067 (1946); Price v. Gurney, 324 U.S. 100, 105, 65 S.Ct. 513, 89 L.Ed. 776 (1945); Horwitz v. Balaban, 112 F.Supp. 99 (S.D.N.Y.1949); 13 Fletcher, Cyclopedia Corporations §§ 5908, 5911 (1961).

The plaintiff has not named any of the officers or directors of Florida as defendants.   It has only named the majority stockholder General Telephone.

The only reference to a derivative suit in the complaint is in the box and not in the body of the complaint, but this is sufficient to inform the defendants of the theory on which the plaintiff is proceeding.

The question therefore becomes, assuming the allegations of the complaint to be true: Does a corporation have a cause of action against a controlling stockholder who buys $14,000,000 worth of its stock for $7,000,000?

Defendants argue that a corporation is not injured when it sells its stock at less than its actual value at the time of issuance.   Reference is made to the common practice of corporations to issue new shares to its stockholders at less than actual value; but this, as conceded in Florida's brief, is done through an offering to all the stockholders, usually through the issuance of rights so that all stockholders may avail themselves of the offer and have the opportunity to maintain their proportionate

888

positions in the corporation. This was not done here.

■ It has long been recognized that the *directors* of a corporation have a duty to the corporation which they serve. If they violate this duty, stockholders may sue them in behalf of the corporation.

■ As the law developed, it was recognized that the holders of the majority of the shares also have a duty to the holders of the minority. The leading case was Farmers'·Loan & Trust Co. v. New York & No. Ry., 150 N.Y. 410, 44 N.E. 1043, 34 L.R.A. 76 (1896), where the Court stated:

> "The law requires of the majority of the stockholders the utmost good faith in their control and management of the corporation as regards the minority, and in this respect the majority stand in much the same attitude towards the minority that the directors sustain towards all the shareholders." at 430, 44 N.E. at 1048.

Thus, after Farmers' it was clear that a duty ran from the majority to the minority stockholders. The question of the duty of the majority stockholder to the corporation itself was still unanswered.

When the majority stockholder was also a director, the courts had little difficulty in finding a cause of action on behalf of the corporation, or a derivative suit if brought by minority stockholders. In Pollitz v. Wabash Ry., 207 N.Y. 113, 100 N.E. 721 (1912) the plaintiff brought a derivative suit against the defendant directors (who were also the majority stockholders) to recover ten million dollars of corporate stock which they had donated to themselves. The court found that this stock deal injured the potential ability of the corporation to secure the cash value of the stock. The majority stockholders could not ratify the transaction because it was a fraud upon the corporation and all its stockholders.

In Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919) the Supreme Court, through Justice Brandeis, clearly defined the minority stockholder's right to sue the majority *directly*. The right of the corporation to sue its majority stockholder was not in issue. The Court stated that the majority stockholder occupies a fiduciary relationship to the minority. And if the majority, through its control of the corporation makes a sale of corporate property to itself, the minority can not be excluded from a fair participation in the fruits of the sale.

Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) involved a bankrupt corporation whose dominant and controlling stockholder schemed to defraud it and its creditors. In the course of its opinion the Court, after stating the usual rule that a director is a fiduciary, as is a controlling stockholder, related this fiduciary duty of the stockholder to the corporation:

> "Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." at 306, 60 S.Ct. at 245.

The court went on to state that the essence of the test was whether or not it carried the earmarks of an arm's length bargain. If it did not, a court of equity would set it aside. The court indicated that the suit against the majority stockholder could be derivative, for it said:

> "While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." Pepper, at 307, 60 S.Ct. at 245.

Also to the same effect is Gerdes v. Reynolds, 28 N.Y.S.2d 622 (Sup.Ct. 1941).

In Equity Corp. v. Groves, 294 N.Y. 8, 60 N.E.2d 19 (1945) the New York Court of Appeals stated: "Directors of a corporation and in some cases stockholders who dominate and control a corporation, occupy a 'position of partial trust'. * * * Their relation to the corporation is fiduciary in character and they may be held accountable in equity for detriment to the corporation caused by their breach of the fiduciary obligation arising from that relationship and for profits resulting to them from such breach." 294 N.Y. at 12, 60 N.E.2d at 21. Equity Corp. involved the demand for an accounting by the corporation from the majority stockholder who controlled the predecessor corporation.

Finally in Selman v. Allen, 121 N.Y.S. 2d 142 (Sup.Ct.1953) a minority stockholder sought to enjoin the receipt of stock by two directors under a stock option plan. Under the plan the defendants would receive a stock worth $16.60 for $11.50. The corporation moved to have the plaintiff put up security. The plaintiff claimed it was a personal right of action, and no security was necessary. The court distinguished between the personal right of a shareholder to retain his relative position, and the right to prevent a gift of corporate property. The court held that the wrong involved was waste and mismanagement of corporate assets and, consequently, a wrong to the corporation.

In Ripley v. Int'l. Rys. of Central America, 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960), United Fruit Company, a defendant, was the majority stockholder and in control of the Railroad company. The plaintiff, a minority stockholder of the Railroad, brought a derivative action against United Fruit to recover the difference between the alleged inadequate freight rates charged United Fruit by the Railroad and the fair and reasonable value of the transportation services. The court found that United Fruit stood in a fiduciary relationship to the Railroad company and allowed recovery in a derivative action.

From the foregoing, and assuming, as we must, the allegations of the complaint, the plaintiff has stated a derivative cause of action on behalf of Florida and against General Telephone. For, as demonstrated above, the majority stockholder who exercises a dominating influence over its corporation has a duty of good faith to the corporation *and* to its minority stockholders. Baker and Cary, Cases on Corporations 527 (3rd ed. 1959).

Thus, General Telephone stood in a fiduciary relationship to Florida and was under the duty to deal with it in the utmost good faith. Pepper v. Litton, supra. Occupying this position, General Telephone may be held accountable in equity for a detriment to Florida caused by its breach of its fiduciary obligation. Equity Corp. v. Groves, supra. The plaintiff has adequately alleged such a breach. General Telephone received property of the corporation alleged to be worth $14,000,000, for which it in turn paid only $7,000,000. General Telephone, as majority stockholder, must establish the inherent fairness of this transaction from the viewpoint of the corporation and its stockholders. Pepper v. Litton, supra 308 U.S. at 307, 60 S.Ct. at 238.

Therefore, I find that the plaintiff has properly stated a derivative cause of action. The argument that the plaintiff and other minority stockholders should be relegated to a personal action against General Telephone is not persuasive. The effect of the transaction, if proved at the trial, would not only establish injury to Florida but would increase General Telephone's proportionate share of dividends and all other benefits which may accrue to the stockholders of Florida, to the detriment of the minority stockholders. It is hard to see how this could be corrected through personal suits between minority stockholders and General Telephone, whether to

recover parts of dividends as received or to require General Telephone to transfer to the minority stockholders their proportionate interest in the shares issued in 1960. The appropriate remedy is a derivative action on behalf of the corporation.

The motions of Florida and General Telephone are denied.