**In re CAROLINA PARK ASSOCIATES, LLC, a Delaware LLC, Debtor(s).**

**C/A No. 10–03524–DD.**

United States Bankruptcy Court, D. South Carolina.

June 17, 2010.

R. Geoffrey Levy, Columbia, SC, for Debtor.

Joseph F. Buzhardt, III, Office of the United States Trustee, Columbia, SC, for U.S. Trustee.

## ORDER DISMISSING CASE

DAVID R. DUNCAN, Bankruptcy Judge.

THIS MATTER is before the Court on Palmetto Debt Holding Group, LLC's ("PDH") Motion to Dismiss ("Motion"). The Motion was heard on an expedited basis following the request filed by PDH. Carolina Park Associates, LLC ("Debtor") objected to PDH's Motion on June 4, 2010. The Town of Mount Pleasant, a creditor of the Debtor, joined in support of PDH's Motion. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.

### *FINDINGS OF FACT*

Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on May 17, 2010. The Debtor is a limited liability company ("LLC"), organized and existing under the laws of Delaware and is authorized to conduct business in South Carolina. The Debtor is comprised of two members each holding a fifty (50%) percent interest. The members of the Debtor are Republic–Charleston, LLC ("Republic") and MDC of Charleston, LLC ("MDC"). Republic, a Delaware LLC, is the managing member of the Debtor. Debtor's petition was signed by David L. Peter as Manager of Republic the Managing Member of the Debtor. Included with Debtor's petition was a "Statement Regarding Authority to Sign and File Petition" signed by Mr. Peter and executed on May 17, 2010. This Statement Regarding Authority included the following resolution which it purported to be adopted by the members of the Debtor:

> Whereas, it is in the best interest of this Limited Liability Company to file a voluntary petition in the United States Bankruptcy Court pursuant to Chapter 11 of Title 11 of the United States Code;

> Be it Therefore Resolved, that David L. Peter, Manager of this Limited Liability Company, is authorized and directed to execute and deliver all documents necessary to perfect the filing of a Chapter 11 voluntary bankruptcy case on behalf of the Limited Liability Company. . . .

The Debtor's primary asset consists of various tracts of real estate being developed in Charleston County, South Carolina known as Carolina Park. The first note and mortgage on Carolina Park Property is held by PDH. On March 24, 2010, the Charleston County Master in Equity entered a foreclosure decree finding that PDH was due $26,749,051.50 as of March 11, 2010, with interest accruing at a rate of $4,678.50 per day. The Master in Equity's decree also found that CDM of Charleston,

LLC [1] ("CDM") holds a second mortgage on the Carolina Park Property and was owed $21,943,492.07, with a per diem interest accrual of $2,051.33. A foreclosure sale of the Carolina Park Property was scheduled by the Master in Equity for May 18, 2010.

The operating agreement of the Debtor states that "filing a petition in Bankruptcy or for the adoption of an arrangement under any Bankruptcy statute," requires "the joint consent of the members, exercisable in their reasonable discretion." Testimony elicited by PDH at the hearing on the Motion to Dismiss established that prior to the Debtor's petition Republic requested that MDC consent to the filing of the petition, but MDC refused. Discussions between the members concerning Debtor's financial problems and possible solutions had been ongoing for some time. Ben Marino, manager of MDC, testified that MDC's position is that bankruptcy is not in the best interest of the Debtor because reorganization will not satisfy its creditors and that the Town of Mount Pleasant would react to the bankruptcy filing by withdrawing certain entitlements or concessions it had granted the Debtor. Mr. Marino further testified that MDC does not consent to the Debtor's bankruptcy filing.

On May 13, 2010 Republic and MDC entered into an agreement titled, "Mutual Release of Claims and Covenant Not to Sue." The release provides that MDC will not object to a chapter 11 filing or otherwise contest the validity of such filing. The release states:

> The Republic Parties and the MDC Parties Agree that neither Party will commence any lawsuit, administrative pro-

ceeding, arbitration, mediation, claim, and/or action against the other with respect to: (i) any matter subject to the Mutual Release set forth above; (ii) the rights, duties or obligations of MDC and Republic, whether to each other or otherwise, under the operating Agreement or any other law applicable thereto; (iii) any action taken by MDC in its capacity as a creditor of [the Debtor]; (iv) any action taken by CDM with respect to the CDM Mortgage or its rights thereunder; or (v) any act or failure to act in connection with any bankruptcy proceeding instituted by [the Debtor].

The release further recites that Republic had funded a retainer of one hundred thousand dollars ($100,000.00) for the express purpose of retaining "bankruptcy counsel to file and maintain a bankruptcy proceeding." The release provides that if the retainer is returned to the Debtor the money would be refunded to Republic. The manager of MDC, Mr. Marino, testified that MDC entered into the release agreement not to contest a bankruptcy filing, despite its belief that bankruptcy was not in the best interest of the Debtor, because MDC believed that litigation between MDC and Republic would otherwise ensue and that such litigation would be costly and time consuming.

### CONCLUSIONS OF LAW

PDH and the Town of Mount Pleasant argue that Debtor's petition for relief pursuant to chapter 11 of the Bankruptcy Code is unauthorized because MDC never gave its consent as required by the Debtor's operating agreement. The Debtor contends that the release agreement between Republic and MDC contemplated

---

1. CDM is an entity that is owned primarily by and subject to the management control of Benedict T. Marino. Mr. Marino's company, B.T. Marino Investment, LLC, is a member of MDC and Mr. Marino serves as the manager of MDC. MDC and CDM are thus closely affiliated.

the filing of a bankruptcy petition thereby providing the functional equivalent of the consent necessary under the operating agreement. In the alternative, the Debtor argues that the consent of MDC is not necessary because the decision not to file bankruptcy is not the reasonable exercise of judgment on the part of MDC.

A bankruptcy petition by an entity may only be filed under authority of those with the lawful power to so act. *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945) (denying a corporate debtor access to relief under the Bankruptcy Act where the directors of the company had not authorized the petition). The well settled rule in this district is that a bankruptcy petition by a corporation must be properly authorized. *Kelly v. Elgin's Paint & Body Shop (In re Elgin's Paint and Body Shop, Inc.)*, 249 B.R. 110, 111 (Bankr.D.S.C.2000) (dismissing a voluntary petition under chapter 11 of the Bankruptcy Code when evidence indicated that the filing of the petition through an officer of the corporation was *ultra vires* ). The court in *Elgin's* recognized that a party filing on behalf of a corporation must be specially authorized to file a bankruptcy petition by the corporation's board of directors or otherwise authorized to file the petition under the corporation's articles of incorporation or by a shareholder agreement. *Id.* at 112.

In this case the Debtor is a limited liability company. Where corporations are governed by articles of incorporation and bylaws, limited liability companies are governed by an operating agreement. The operating agreement of this Debtor states that the consent of the members of the LLC are required to authorize a voluntary petition under the Bankruptcy Code. The operating agreement of an LLC is a contract between the members and should be interpreted under the laws of the state where the LLC was formed. *See e.g., Orchard At Hansen Park, LLC*, 347 B.R. 822, 826 (Bankr.N.D.Tex.2006) (looking at state law and the LLC's operating agreement to determine that an LLC's bankruptcy petition was not properly authorized).

PDH and the Town of Mount Pleasant seek dismissal of the bankruptcy case. The Bankruptcy Code provides:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall ... dismiss a case under this chapter ... if the movant establishes cause.

11 U.S.C. § 1112(b)(1). A number of courts have held that the lack of authority to initiate a bankruptcy filing is cause for dismissal. *See In re A–Z Elec., LLC*, 350 B.R. 886, 891 (Bankr.D.Idaho 2006); *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr.D.Idaho 2005); *In re J & J Prop. Holdings, LLC*, 2004 WL 5463804 at *2 (Bankr.W.D.N.C. Jan.20, 2004). Other courts seemingly rest dismissal not on a showing of cause but solely on the absence of authority. *In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D.Ohio 2010); *See also, In re Southern Elegant Homes, Inc.*, 2009 WL 1639745 at *1 (Bankr.E.D.N.C. June 9, 2009); *In re N2N Commerce, Inc.*, 405 B.R. 34, 41 (Bankr.D.Mass.2009); *In re Telluride Income Growth Ltd. P'ship*, 311 B.R. 585, 591 (Bankr.D.Colo.2004); *Elgin's*, 249 B.R. at 112.

Many of these cases involve requests for dismissal by a shareholder. Here we have a Motion to Dismiss by creditors. It appears the better rule that creditors have standing to seek dismissal

of bankruptcy cases on the basis of the absence of authority to file the petition. *Orchard,* 347 B.R. at 825; *See also, In re Abijoe Realty Corp.,* 943 F.2d 121, 124–25 (1st Cir.1991); *In re Consol. Auto Recyclers, Inc.,* 123 B.R. 130, 137 (Bankr.D.Me. 1991); *In re Memphis–Friday's Assocs.,* 88 B.R. 821 (Bankr.W.D.Tenn.1988). The burden is on the movant to show cause for dismissal by a preponderance of the evidence. *Comscape,* 423 B.R. at 830. The question of whether the Debtor was authorized to file bankruptcy turns upon whether MDC consented to the Debtor's petition.

## I. Consent

▉ The question presented in this case with whether the agreement not to object or otherwise contest the validity of a bankruptcy filing entered into between MDC and Republic operates as the consent necessary by the terms of the Debtor's operating agreement. Under Delaware law, construction of a contract is a question of law. *See, Rhone–Poulenc Basic Chems. Co. v. Amer. Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992). Where a contract's language is "clear and unambiguous," the ordinary meaning of the language to a reasonable third party will establish the parties' intent. *See, Comrie v. Enterasys Networks, Inc.,* 837 A.2d 1, 13 (Del.Ch.2003).

▉ The ordinary meaning of "consent" when used as a verb is, "to permit, approve, or agree; comply or yield." Webster's Unabridged Dictionary (2001). When an entity consents to a particular action, that person has unequivocally manifested his or her affirmation of the proposed action through some discernable statement or act. *See, e.g., In re DeCelis,* 349 B.R. 465, 467 (Bankr.E.D.Va.2006) (analyzing the meaning of consent as it relates to 11 U.S.C. § 363). "Consent" and

"fails to object" are simply not synonymous.

▉ In this case, the Debtor's operating agreement requires the consent of MDC and Republic *as a prerequisite* to the filing of a petition for relief under the Bankruptcy Code. The absence of an objection does not satisfy this condition precedent to filing. Furthermore, MDC's lack of consent to the filing of the petition was clearly established by Mr. Marino, who testified pursuant to a subpoena issued by PDH, that he knew the release agreement contemplated bankruptcy but that MDC did not consent to the filing. Where, as here, the agreement contains a clear and unequivocal condition precedent to an action the requirement is not met by an agreement not to object.

## II. Reasonable Discretion

▉ The Debtor alternatively argues that MDC did not exercise its reasonable discretion in making the decision about bankruptcy. It is clear from the testimony that Republic and MDC have different views as to the potential benefit of a bankruptcy filing. Implicit in the testimony of Republic's manager is a concern that MDC's position is influenced or even dictated by CDM's interest as the second mortgage holder.

The testimony of Mr. Marino established that MDC did not consent to the bankruptcy filing. He stated this was because it did not believe that bankruptcy was in the best interest of the Debtor. The basis of Mr. Marino's belief was that (1) in the current economic climate the likelihood of a successful reorganization by the Debtor was slight, and (2) bankruptcy would likely jeopardize the development agreement and entitlements that the Debtor established with the Town of Mount Pleasant. Mr. Marino also testified that MDC entered into the agreement not to object to the

bankruptcy because it wished to avoid litigation with Republic which MDC felt might ensue because an affiliate of MDC, CDM, was a secured creditor of the Debtor. The Court cannot say that this concern over possible litigation is not reasonable. Many business decisions are made or influenced by litigation considerations.

### *CONCLUSION*

Based upon the terms of the Debtor's operation agreement, David L. Peter did not have the requisite authority to file a bankruptcy petition on behalf of the Debtor.

IT IS THEREFORE ORDERED that the Debtor's petition is DISMISSED.

**AND IT IS SO ORDERED.**